WEBB et al. v. THOMAS et al.

RAWITSER et al. v SAME.

(Supreme Court, General Term, Third Department.   November 22, 1892.)

ASSIGNMENT FOR BENEFIT OF CREDITORS—PREFERENCE TO INDORSERS.

   An assignment made by a firm for the benefit of its creditors is not, in the absence of fraud, invalid because it prefers the indorser, and not the holder, of a valid unpaid note, though such indorser is at the time a member of the firm.

Appeal from special term, Montgomery county.

Actions by Charles J. Webb and Harry E. Lincoln against J. Melvin Thomas and William T. Pettengill, copartners under the firm name of Thomas & Pettengill, and William J. Kline, assignee of said firm, and by Simon Rawitser and another against the same defendants, to set aside an assignment for the benefit of creditors on the ground of fraud.  From a judgment of the special term in favor of defendants, plaintiffs appeal. Affirmed.

The following opinion was delivered at special term by Stover, J.:

"This is an action brought to set aside a general assignment for the benefit of creditors upon the ground that it was fraudulent.  The plaintiffs are judgment creditors of the assignors.  I have examined the testimony and briefs of the parties, and think that the only serious question to be considered by the court is that raised by the proofs with respect to the claim described in the assignment as in favor of W. T. Pettengill, one of the assignors.  That clause in the assignment is as follows: 'The said several claims existing on the 15th day of April, 1889, except such as are mentioned in Schedule A. created since that time, and are more particularly set forth in class marked "two" in the schedule to accompany this assignment, and being then in favor of the said firm's creditors, respectively, as follows.'  Then follows a list of creditors, perhaps fifty or more in number, and in which list the name of W. T. Pettengill appears.  The nature or amount of the indebtedness is not set forth.  In the schedule filed by the assignors appears a statement of the creditors of said firm, with the nature and amount of the indebtedness, and in that list appears the name of W. T. Pettengill, held by David Cady, amount $1,200, and the character of the indebtedness, 'indorsement.'  The oral testimony given upon the trial shows that the defendant Pettengill indorsed a note for $1,200 for the benefit of the firm, and that the firm received the proceeds and benefit of the note.  At the time of the assignment the note was held by the First National Bank, or by David Cady, who was the cashier of said bank; and this was the claim referred to in the assignment and schedules.  It is claimed on the part of the plaintiffs that this was a fraudulent preference.  I do not think that the evidence establishes such fraudulent character.  As has been repeatedly held, fraud must be proven, and the fraudulent intent must have existed at the time of the transaction, although it may be evidenced by the acts of the parties in relation thereto.  The burden of establishing such fraud is upon the plaintiff, and the evidence should be clear in order to warrant the court to find that it was fraudulent.  In this case the defendant Pettengill stood in the position of surety for the firm.  The firm had had the benefit, and in making the assignment it had a right to prefer Mr. Cady, or the First National Bank; and it seems to me that this is all that this transaction accomplished.  It is true that W. T. Pettengill is named as a debtor, but this, at most, it seems to me, would raise a presumption of fraud; and when the intent was inquired into, and the whole transaction was made to appear, the fact would appear that he was not the creditor in such a sense that he received an illegal preference by the payment of the debt under the assignment, but indirectly, so far as the firm paid the debt, he, as surety for the firm. received the benefit.  I do not understand that the law prohibits such a transaction.  An insolvent copartnership may prefer any creditor within the limit as to the amount prescribed by the statute, so long as the debt is a just debt against the partnership; and, while it is immaterial what form the transaction takes if it be in fact a fraudulent one, and deprives creditors of their just rights

in the property, on the other hand, it makes no difference as to the manner in which the preference is exercised if it is free from the intent to defraud creditors, and the conveyance not in a form prohibited by law. In other words, it is the intent with which the act is done that characterizes it as fraudulent or otherwise. I do not think the proofs in this case would warrant a finding that the firm intended at the time the assignment was made to make a fraudulent preference in favor of W. T. Pettengill. As it would have been free from doubt if the debt had been characterized as due to the First National Bank, or Mr. Cady, I do not think that using the name of W. T. Pettengill in describing the debt made the transaction fraudulent, the actual facts appearing. It was upon the plaintiffs to show the fraud, and I do not think the proofs do this. This case is quite unlike Frazier v. Truax, 27 Hun, 587. In that case a person was named as creditor who had no connection whatever with the debt, and it was sought to explain the preference by proving a parol trust in favor of a third party. The distinction is quite apparent, for in this case there is no question as to the validity or the amount of the indebtedness.

"In regard to the claim of H. Inman & Son, it appeared that the firm had had transactions with both firms, and that the actual indebtedness was to the corporation, the Inman Manufacturing Company. This, too, was a valid debt, and the evidence shows that the name of Inman & Son was not inserted with any fraudulent purpose.

"I think the plaintiffs have failed to sustain the allegations of the complaint. The decree will be in favor of the defendants."

Argued before MAYHAM, P. J., and PUTNAM and HERRICK, JJ.

Horwitz & Hershfield, (Westbrook & Borst, of counsel,) for appellants. W. L. Van Denbergh, for respondents.

PUTNAM, J. We think the view taken of these cases at special term was correct. In addition to the opinion there delivered, we only deem it necessary to make a few suggestions. It is sought to avoid the assignment because of illegal preferences, but it is not claimed that any of the debts in fact preferred are fictitious or fraudulent. The claim for which Pettengill is preferred is shown to be an honest debt, owing to the First National Bank, of which David Cady was cashier. It is not claimed that the notes for which Gardnier and Mrs. Pettengill are indorsers were not honest claims due and owing from the firm. Also the debt for which H. Inman & Son were preferred was a debt owing by the firm to the Inman Manufacturing Company; the assignors making a mistake in the name of the creditors. It will be observed that in this regard the case differs from that of Ellis H. Roberts & Co. v. Vietor, 130 N. Y. 585, 29 N. E. Rep. 1025, and other cases cited by appellants, where the debts sought to be preferred were fictitious or fraudulent. The plaintiffs failed to show upon the trial any unlawful retention by the assignors of a portion of their property. Therefore, if the assignment should not be sustained, it would be because the assignors, although honestly owing the several notes above referred to, illegally preferred the indorsers instead of the party holding the notes,—in one instance such indorser being a member of the firm, and one of the assignors. We think the view taken below as to the last-named preference correct. The assignment and inventory are to be read together, (Phillips v. Tucker, 14 N. Y. St. Rep. 120;) and, being so read, we think the assignment should be deemed a preference of the debt of $1,200 owned by the First National Bank, of which David Cady was cashier. And see Smith v. Smith, (Sup.) 14 N. Y. Supp. 461.

It is claimed by appellants that the preference to the several other indorsers named who have not paid the indorsed notes should avoid the assignment; that the preferences should be made to the owner or holder of the debt. I am under the impression, however, that it has long been settled that a failing debtor may prefer an indorser or surety. See Bish. Insolv. p. 119; Cunningham v. Freeborn, 11 Wend. 250; Griffin v. Marquardt, 21 N. Y. 121. In the case last cited the following language is used:

"Nor are the trusts to pay the indorsers or sureties of the assignor the sums for which they were severally liable invalid. It appears from the assignment itself that some of the indorsed notes were not due at the time the assignment was made, and were held and owned by corporations or persons other than those to whom the money was directed to be paid. But these were trusts to pay the debts or obligations of the assignor, for which the indorsers or sureties were severally liable, and there can be no doubt that the holders and owners of the claims designed to be protected might compel an appropriation of the assigned property to their payment. This being so, the provision has the same effect as if the holders were named the cestui que trust in the instrument."

Griffin v. Marquardt, supra, which, we think, has never been questioned, shows that the preferences to the several indorsers are in fact a preference to the owners or holders of the notes enforceable by the latter. Under the provisions of sections 3 and 4 of chapter 414 of the Laws of 1857 the fact that Gardnier had formerly been a special partner did not render the preference to him illegal.

The judgment should be affirmed, with costs. All concur.